UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAIAH McKINNLEY, on behalf of himself and all other persons similarly situated,<br><br>Plaintiff<br><br>-against-<br><br>ATM COLLECTION INC.,<br>Defendant. | Docket No.<br><br><br>CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL |

Plaintiff, ISAIAH McKINNLEY, ("Plaintiff" or "Mr. McKinnley") on behalf of himself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their putative class action complaint upon Defendant, ATM COLLECTION INC. ("ATM COLLECTION" or "Defendant"), hereby alleges as follows:

**INTRODUCTION**

1. On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress, last accessed July 19, 2024.)

2. Plaintiff, ISAIAH McKINNLEY, is a legally blind resident of New York County (Bronx), New York. He has been diagnosed with retinitis pigmentosa, a progressive inherited retinal disorder causing gradual loss of peripheral vision and night blindness, resulting in severe visual impairment. His condition is documented by

his treating ophthalmologist, Dr. Alicia Torres, M.D., of the Bronx Eye & Vision Center. (See Exhibit A.) Mr. McKinnley resides in the Bronx and relies exclusively on assistive technology to navigate digital environments and conduct daily online activities independently.

3.    Mr. McKinnley is a proficient user of Job Access With Speech ("JAWS") screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content — including retail platforms, product selection pages, and online checkout systems — without assistance. JAWS's compatibility with properly coded websites is indispensable to his autonomy and digital independence.

4.    This action arises from Defendant ATM Collection Inc.'s failure to design, maintain, and operate its website, www.atmcollection.com, in a manner accessible to blind and visually impaired individuals. The website functions as an interactive retail platform for luxury clothing, including cashmere sweaters, women's and men's apparel, and accessories, and serves as a digital gateway to Defendant's goods and services. Defendant's failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5.    On November 15, 2025, December 10, 2025, and February 5, 2026, Mr. McKinnley visited www.atmcollection.com using JAWS with the intent to shop for luxury clothing for himself and as a gift for his partner. As a legally blind consumer, he depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require him to seek assistance from strangers — an experience he finds uncomfortable, intrusive, and incompatible with

his desire for independence. During these visits, Mr. McKinnley attempted to review and purchase two specific products: the Cashmere Wide Rib Cardigan in Chalk ($450.00) from Defendant's women's cashmere collection as a gift, and men's clothing items from Defendant's men's collection, including the Slub Jersey V-Neck Tee ($98.00), for himself. Because the website lacked proper alternative text, contained unlabeled interactive elements, employed inaccessible buttons and navigation controls, and failed to provide screen-reader-compatible navigation throughout key sections of the site, Mr. McKinnley was unable to meaningfully access product information, configure available options, or complete the intended purchases.

6.     These barriers included missing or meaningless alternative text on product imagery, unlabeled interactive buttons throughout the collection pages, inaccessible empty form labels and broken skip links, and ARIA implementation failures — each of which rendered key content unreadable or non-functional under JAWS screen-reader software. The WAVE Accessibility Reports conducted on www.atmcollection.com confirm that these violations are systemic and site-wide, contravening the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA.

7.     Defendant ATM Collection Inc. (also known as ATM Anthony Thomas Melillo) is a California corporation doing business in New York. Defendant owns and operates www.atmcollection.com, a nationwide e-commerce platform offering luxury clothing, including cashmere sweaters, knitwear, women's and men's apparel, and accessories, to consumers across the United States, including New York. The website enables customers to browse collections, select sizes, and purchase products directly for delivery to addresses throughout the country. Defendant's digital platform

constitutes its primary commercial interface with consumers, establishing a clear and direct nexus between its digital platform and its business operations.

8.    Mr. McKinnley specifically sought out ATM Collection for the purchase of the Cashmere Wide Rib Cardigan in Chalk and men's clothing items due to the company's distinctive reputation for elevated essentials and luxury cashmere at accessible price points, and the unique quality of ATM's direct-to-consumer apparel offerings. Mr. McKinnley desired the Cashmere Wide Rib Cardigan in particular because of its distinctive design in a neutral colorway — a style he had researched and believed he could not find at comparable quality and price through other online or physical retailers. As a blind consumer, he depends on accessible digital interfaces to independently make informed purchasing decisions. Defendant's failure to provide a WCAG-compliant website denied him equal access to the same product information, selection tools, and purchasing services offered to sighted users. Despite the nature of its e-commerce operations and its offering of a purported accessibility statement, Defendant has failed to implement and maintain basic accessibility features, reflecting a pattern of disregard for the rights of disabled individuals.

9.    Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is — and remains — fully accessible to blind and visually impaired users. Mr. McKinnley remains committed to maintaining an assistive technology regimen that supports his independence. Without remediation of the barriers described herein, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

10.    Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant

to bring its website into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12.     Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant ATM Collection Inc. conducts substantial and continuous business in this District through its interactive website, www.atmcollection.com, and Plaintiff accessed and attempted to use this website from his residence in New York County (Bronx), and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

14.     Defendant actively engages in commercial transactions with New York residents through its website, including product browsing, selection, checkout, and delivery services. Defendant's digital infrastructure knowingly transmits data and files into New York, establishing purposeful availment under federal precedent. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont.* Eighth Judicial Dist. Court, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22,

2022).

15.    Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over website operators.

## **NATURE OF ACTION**

16.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

17.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

18.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

19.    Users of Windows-enabled computers have access to several screen-

reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

20.    Plaintiff, ISAIAH McKINNLEY, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software, specifically JAWS for Windows.

21.    For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text... The screen reading software uses auditory — rather than visual — cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*See also American Federation for the Blind, Screen Readers, AFB Technology Guide* (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

22.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish

internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

23.    Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

    a.    Missing text equivalents for non-text elements

    b.    Unlabeled frames and navigation regions

    c.    Scripts without accessible alternatives

    d.    Inaccessible forms and input fields

    e.    Content conveyed solely through visual presentation

    f.    Inability to resize text without loss of functionality

    g.    Time limits that cannot be adjusted or disabled

    h.    Missing or ambiguous page titles

    i.    Links lacking descriptive context

    j.    Keyboard focus indicators that are not discernible

    k.    Undetectable default language settings

    l.    Components that trigger unexpected context changes

    m.    Settings that alter context without user notice

    n.    Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

    o.    Improperly nested markup, duplicate attributes, and non-unique IDs

    p.    Inaccessible Portable Document Format (PDF) files

    q.    User interface elements whose roles and states cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

24.    Plaintiff Isaiah McKinnley is a legally blind consumer residing in New York County (Bronx), New York. He relies exclusively on Job Access With Speech

("JAWS") screen-reader software to navigate digital content and complete online transactions independently. Mr. McKinnley receives ongoing ophthalmologic care and assistive-technology support, and his legal blindness is documented by his treating physician, Dr. Alicia Torres, M.D., of the Bronx Eye & Vision Center. (See Exhibit A.)

25.     On November 15, 2025, December 10, 2025, and February 5, 2026, Mr. McKinnley visited www.atmcollection.com using JAWS with the intent to purchase luxury apparel for himself and as a gift for his partner. He specifically sought to purchase the Cashmere Wide Rib Cardigan in Chalk ($450.00) as a gift, and the Slub Jersey V-Neck Tee ($98.00) and other men's apparel from Defendant's men's collection for himself. As a blind consumer, Mr. McKinnley relies on accessible online shopping to avoid the logistical and emotional strain of in-person retail, which often requires asking strangers for assistance — an experience he finds uncomfortable, intrusive, and incompatible with his desire for independence.

26.     Mr. McKinnley chose ATM Collection specifically — over other online luxury apparel retailers — because of ATM Collection's distinctive reputation for elevated, high-quality cashmere and luxury essentials, and its direct-to-consumer pricing model that makes exceptional craftsmanship accessible. Mr. McKinnley was drawn in particular to the Cashmere Wide Rib Cardigan's distinctive chalk colorway and wide-rib construction — a combination he had researched and determined was offered by ATM Collection at superior quality and value compared to comparable styles available elsewhere. His interest in ATM Collection as a retailer was specific, considered, and not interchangeable with other companies.

27.     While attempting to navigate the product pages and collection pages on www.atmcollection.com, Mr. McKinnley encountered multiple accessibility barriers

that prevented him from reviewing complete product information, selecting size and color options, or adding items to his cart. The WAVE Accessibility Reports confirm these issues are systemic, identifying numerous errors across multiple pages of www.atmcollection.com, including widespread failures affecting the ability of JAWS users to independently navigate and transact on the site.

28.     Specifically, Mr. McKinnley encountered the following access barriers on www.atmcollection.com, which were confirmed by the WAVE Accessibility Reports conducted on the website (Exhibit B)

a.      Empty form labels throughout the website, including on the product page for the Cashmere Wide Rib Cardigan, which prevented JAWS from conveying the purpose of input fields to Mr. McKinnley, making it impossible for him to complete size selection and other required fields;

b.      Empty buttons throughout the website — including 25 empty buttons on the Men's View All collection page and 25 empty buttons on the Women's View All collection page — which JAWS announced without any label or descriptive text, rendering those interactive controls completely unusable by screen reader;

c.      Empty links on multiple pages, including 3 empty links on the product page and collection pages, which JAWS read without any meaningful text, preventing Mr. McKinnley from understanding the destination or purpose of those navigation elements;

d.      Broken skip links throughout the site, including 3 broken skip links on each major page tested, which are intended to allow keyboard and screen reader users to bypass repeated navigation blocks but instead linked to non-existent targets, forcing Mr. McKinnley to navigate through the entire page structure on every page visit;

e.      A linked image missing alternative text on the Men's View All and Women's View All collection pages, causing JAWS to announce the file path or URL of the image instead of a meaningful description, preventing Mr. McKinnley from understanding the content or destination of those linked images;

f.      Very low contrast text throughout the website — 12 contrast errors on the product page and 3 contrast errors on each of the collection pages — which, while primarily a visual concern, reflects the site's systemic failure to implement accessibility standards;

g. Redundant and orphaned form labels and missing fieldsets identified throughout the site, contributing to a disorganized and inaccessible form structure that JAWS users cannot reliably navigate;

h. The logo link on the ATM Collection website was not labeled, meaning that JAWS announced the logo as a graphic without conveying its function as a link to the homepage;

i. Site element text was not integrated with JAWS, causing the screen reader to either skip over elements or provide meaningless output rather than conveying the intended information;

j. Product size and color options were abbreviated in a manner incompatible with screen reader pronunciation, rendering them confusing or meaningless when announced by JAWS;

k. The shopping cart was inaccessible to JAWS users, preventing Mr. McKinnley from reviewing, modifying, or completing his intended purchases even when he was able to locate items of interest; and

l. Social media links were unlabeled and announced by JAWS only as generic or empty links, preventing Mr. McKinnley from understanding the purpose or destination of those navigation elements.

29. Mr. McKinnley also encountered significant barriers within ATM Collection's product pages and collection navigation — the primary tools through which customers browse clothing categories, select items, and configure purchases. The interactive elements on these pages, including category filters, size selectors, color options, and add-to-cart buttons, were not consistently accessible via keyboard commands under JAWS, preventing Mr. McKinnley from progressing through the purchase workflow. The WAVE reports identify failures in button accessibility and form labeling across the site consistent with the barriers Mr. McKinnley encountered when attempting to navigate and shop on www.atmcollection.com.

30. The WAVE Accessibility Reports identify widespread failures in WCAG 2.1 Level A and AA compliance across www.atmcollection.com, including missing or meaningless alternative text on linked images, unlabeled interactive button controls, empty form labels, broken skip links, and low-contrast text. The WAVE reports documented 9 errors on the Cashmere Wide Rib Cardigan product page, 34

errors on the Men's View All collection page, and 32 errors on the Women's View All collection page. These violations directly impacted Mr. McKinnley's ability to independently review, select, and purchase the clothing items he sought.

31.     In an effort to obtain assistance with the accessibility barriers he encountered, Mr. McKinnley attempted to access Defendant's accessibility statement and customer-service resources. Defendant's failure to maintain a meaningfully accessible website demonstrates that any such commitments have not translated into an accessible user experience for blind consumers relying on JAWS. The existence of an accessibility statement is of no remedial value where the underlying barriers remain unaddressed.

32.     The WAVE reports confirm the systemic nature of these failures across www.atmcollection.com, demonstrating that the barriers Mr. McKinnley encountered were not isolated or temporary but part of a pervasive, site-wide pattern of non-compliance with WCAG 2.1 standards. Defendant has failed to implement and sustain effective accessibility measures, reflecting a continuing pattern of disregard for the rights of blind and visually impaired consumers. Notably, Defendant was previously sued in this District for identical accessibility failures on the same website in *Romero v. ATM Collection Inc.*, Case No. 1:20-cv-07852-PGG-RWL (S.D.N.Y. filed Sept. 23, 2020), yet has continued to maintain an inaccessible website.

## CLASS ACTION ALLEGATIONS

33.     Mr. McKinnley remains highly motivated to return to www.atmcollection.com once it is made accessible. His interest is concrete, particularized, and ongoing: he still intends to purchase the Cashmere Wide Rib Cardigan in Chalk for his partner and men's apparel, including the Slub Jersey V-Neck Tee, for himself. These products are not reliably available to him at comparable quality

and price through third-party platforms, and he requires full access to Defendant's product pages, collection navigation, cart, and customer-service features to complete the intended transactions. Pursuant to *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022), Mr. McKinnley's intent to return is not speculative — it is grounded in his specific, documented desire to purchase identified products that remain available on Defendant's website, and his established pattern of attempting to access www.atmcollection.com on multiple occasions.

34.    Mr. McKinnley has suffered a past injury — his inability to complete his intended purchases of specific products due to documented accessibility barriers — and faces a real and immediate threat of future harm, given his stated intent to return once the website is accessible and the continuing presence of site-wide accessibility issues. His injuries are directly traceable to Defendant's failure to maintain an accessible website and are redressable through injunctive relief. Accordingly, Mr. McKinnley has standing to bring this action under Title III of the ADA.

35.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website, www.awolvision.com, and, as a result of Defendant's failure to design and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

36.    Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

37.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the size of the blind and visually impaired population, the national reach of Defendant's website, and the widespread and persistent nature of the access barriers identified across 424 of Defendant's pages.

38.    Common questions of law and fact exist among the Class and Subclass, including but not limited to: (a) whether Defendant's website is a "place of public accommodation" under Title III of the ADA; (b) whether Defendant's website denies blind and visually impaired individuals full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations; (c) whether Defendant's failure to comply with WCAG 2.1 constitutes a denial of equal access; (d) whether Defendant has failed to adopt policies and practices reasonably calculated to ensure ongoing accessibility; and (e) whether injunctive relief is warranted to require Defendant to make its website accessible.

39.    Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, attempted to access Defendant's website, encountered access barriers, and was denied equal access to Defendant's goods and services.

40.    Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and website accessibility cases. Plaintiff has no interests antagonistic to the Class.

41.    Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole under Rule 23(b)(2).

42.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive and declaratory relief appropriate with respect to the Class as a whole.

43.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 et seq.)

44.    Plaintiff, ISAIAH McKINNLEY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

45.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

46.    Defendant's Website, www.atmcollection.com, is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

47.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

48.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

49.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

50.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

### SECOND CAUSE OF ACTION
**(Violation of the New York State Human Rights Law)**

51.    Plaintiff ISAIAH McKINNLEY, on behalf of himself and the Class and

New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

52. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendants. Plaintiff, at all times relevant to this action, as a result of his loss of vision due to retinitis pigmentosa, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

53. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.atmcollection.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

54. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

55. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

56. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

57. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by

discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

58. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

59. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

60. Defendant has intentionally and willfully discriminated against the

Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

61.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

62.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

## THIRD CAUSE OF ACTION
### *(Violation of New York State Civil Rights Law)*
### *("NYCRL")*

63.     Plaintiff, ISAIAH McKINNLEY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

65.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

66.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by

any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

67.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

68.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

69.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass and preventing access in violation of NYCRL § 40.

70.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

71.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

72.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

### FOURTH CAUSE OF ACTION
*(Violations of the New York City Human Rights Law)*

*("NYCHRL")*

73.    Plaintiff, ISAIAH McKINNLEY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

75.    Defendant is subject to NYCHRL because it owns and operates the Website www.atmcollection.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

76.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

77.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or

should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

78.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a.     constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.     constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

79.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

80.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

81.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

82.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

83.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

84.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for

judgment as set forth below.

### FIFTH CAUSE OF ACTION
### *(Declaratory Relief)*

85.    Plaintiff, ISAIAH McKINNLEY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

87.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:**

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; Section

504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.   An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.   Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.   Pre-judgment and post-judgment interest;

g.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
         July 6, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com